UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO VEGA, JR., | 1:22-cv-000471-JLT-EPG (PC) |
| Plaintiff, | ORDER |
| v. | (1) DISCHARGING THE COURT'S ORDER FOR DEFENDANTS TO SHOW CAUSE WHY SANCTIONS SHOULD NOT ISSUE FOR FAILURE TO COMPLY WITH THE COURT'S DISCOVERY ORDER (ECF NO. 106); |
| M. SOTO, et al., | |
| Defendants. | |
| | (2) OVERRULING IN PART DEFENDANTS' CLAIM OF OFFICIAL INFORMATION PRIVILEGE AND REQUIRING DEFENDANTS TO PRODUCE CERTAIN DOCUMENTS; |
| | (3) DENYING PLAINTIFF'S MOTION FOR SANCTIONS REGARDING DEFENDANTS' INTERROGATORY RESPONSES (ECF NO. 108); |
| | (4) GRANTING DEFENDANTS' REQUEST FOR JUDICIAL NOTICE (ECF NO. 120-3); AND |
| | (5) DENYING PLAINTIFF'S MOTION FOR SANCTIONS REGARDING ALLEGED SECRET DEPOSITIONS (ECF NO. 112) |

**A.     INTRODUCTION**

Plaintiff Francisco Vega, Jr., is a state prisoner proceeding *pro se* in this civil rights action. Plaintiff's complaint alleges that, after he filed grievances about the Defendants'

misconduct, including an incident where his testicles were squeezed, Defendants retaliated against him by filing a Rules Violation Report (RVR) falsely accusing him of constructive possession of a cellular phone. (ECF No. 15). This case proceeds on Plaintiff's First Amendment retaliation claims against Defendants Soto, Noujaime, and Borba, who were correctional officers at Valley State Prison (VSP) during the events of the complaint. (*Id.*).

Pending before this Court are multiple documents regarding discovery and sanctions. First, is the Court's April 18, 2024 order for Defendants to show cause why sanctions should not issue for failure to comply with the Court's April 26, 2023 discovery order. (ECF No. 106). Second, is Defendants' request that certain witness interviews and investigative memoranda be withheld from Plaintiff pursuant to the official information privilege. (ECF No. 111) Third, is Plaintiff's motion for sanctions regarding Defendants' interrogatory responses. (ECF No. 108). In their opposition to this motion, Defendants request that the Court take judicial notice of a civil case. (ECF No. 120-3). Fourth, is Plaintiff's motion for sanctions regarding alleged secret depositions. (ECF No. 112).

For the reasons explained in this order, the Court will discharge the show cause order, overrule Defendants' assertion of official information privilege in part and require Defendants to produce certain documents in redacted form, grant Defendants' request for judicial notice, and deny Plaintiff's motions for sanctions.

**B.    WITNESS STATEMENTS RELATED TO INVESTIGATIONS**

The first set of issues concerns Defendants' withholding of confidential memoranda related to investigations of incidents at issue in this case, including witness statements by the Plaintiff, Defendants, as well as by other witnesses. Defendants initially failed to provide these documents to Plaintiff or the Court in response to a Court order at the outset of discovery. Defendants also continue to withhold them form discovery, asserting the official information privilege.

   **1. Order to Show Cause**

      **a. Defendants' withholding of documents required by court order**

After screening the complaint, the Court entered a discovery order on April 26, 2023, which required the parties to exchange certain documents within sixty days, including the

following categories of documents:

> All documents regarding the Rules Violation Report associated with the incident(s) alleged in the complaint, including disciplinary charges and findings.
>
> [And] [w]itness statements and evidence that were generated from investigation(s) related to the event(s) at issue in the complaint, such as an investigation stemming from the processing of Plaintiff's grievance(s).

(ECF No. 43, p. 2) (footnote omitted). Additionally, the Court clarified that "Defendant(s) only need to produce documents such as a Confidential Appeal Inquiry or a Use of Force Critique to the extent those documents contain witness statements related to the incident(s) alleged in the complaint and/or evidence related to the incident(s) alleged in the complaint that will not be provided to Plaintiff separately." (ECF No. 43, at p. 2, n.4).

This order also provided a procedure for objecting to production or providing documents to the Court withheld under the official information privilege:

> Parties may object to producing any of the above-listed documents and/or evidence. Objections shall be filed with the Court and served on all other parties within sixty days from the date of service of this order (or within thirty days of receiving additional documents and/or evidence). The objection should include the basis for not providing the documents and/or evidence. If Defendant(s) object based on the official information privilege, Defendant(s) shall follow the procedures described in the Court's scheduling order.

(*Id.* at 3).

On April 12, 2024, almost a year after the Court issued this order, Defendants filed a notice of submission of documents for *in camera* review, stating "Defendants have submitted for *in camera* review copies of the Confidential Memorandum dated August 12, 2021 and dated July 30, 2021, which are being withheld from Defendant Borba's Response to Request for Production of Documents, Set one, on grounds that portions of this document are protected by the official information privilege." (ECF No. 105).

The submitted documents concern the internal investigation of the incidents at issue, including multiple witness statements generated from that investigation. It thus appeared that the documents fell squarely under the Court's order from April 26, 2023, that Defendants produce "All documents regarding the Rules Violation Report associated with the incident(s) alleged in the complaint, including disciplinary charges and findings," and "[w]itness statements and evidence that were generated from investigation(s) related to the event(s) at issue in the

complaint, such as an investigation stemming from the processing of Plaintiff's grievance(s)" or provide such documents to the Court for *in camera* review. (ECF No. 43, p. 2).

Accordingly, the Court directed Defendants to show cause why sanctions should not issue for failure to provide these documents for *in camera* review within 60 days of the Court's April 26, 2023 order. *See* Fed. R. Civ. P. 37(b) (providing for sanctions for failure to obey a discovery order); *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (noting Court's inherent power to issue discovery sanctions). Additionally, the Court directed Defendants to file a supporting brief, along with any evidence, fully explaining the bases for withholding the documents, including whether some of the information is more or less of a safety risk and whether any redactions would alleviate any of the identified safety concerns.

### b. Defendants' Response to the order to show cause

On May 9, 2024, Defendants filed two documents: (1) a response to the show cause order; and (2) a supplemental brief to support their position that they should be entitled to withhold the documents from Plaintiff. (ECF Nos. 110, 111).

In their response to the show cause order, Defendants stated that they partially complied with the order by, among other things, disclosing the existence of the confidential witness statements at issue to Plaintiff. Further, defense counsel, Mohammad Iranmanesh, stated that he misunderstood the order:

> Defenses counsel misinterpreted the court's initial disclosure portion of the order because he believed that it only applied to documents that were not deemed confidential. Furthermore, defense counsel believed that the court's procedure for in camera review applied to documents requested during the written discovery process. For that reason, defense counsel did not lodge the documents until Plaintiff's request for production of documents requested the confidential witness statements and reports.

(ECF No. 110, p. 3).

### c. Analysis of order to show cause

Rule 37 of the Civil Rules of Civil Procedure governs sanctions for a failure to make disclosures. Specifically Rule 37(b)(2)(A) provides:

> **(A)** *For Not Obeying a Discovery Order.* If a party or a party's officer, director, or managing agent--or a witness designated under Rule 30(b)(6) or 31(a)(4)--fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the

4

> court where the action is pending may issue further just orders. They may include the following:
>
> **(i)** directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> **(ii)** prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> **(iii)** striking pleadings in whole or in part;
>
> **(iv)** staying further proceedings until the order is obeyed;
>
> **(v)** dismissing the action or proceeding in whole or in part;
>
> **(vi)** rendering a default judgment against the disobedient party; or
>
> **(vii)** treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.
>
> . . .
>
> **(C)** *Payment of Expenses.* Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. Proc. 37(b)(2)(A),(C).

As an initial matter, the Court finds that Defendants violated a clear order from the Court. The documents at issue fall squarely within the Court's order. Indeed, Defendants' response concedes that defense counsel failed to comply in full with the Court's order, while nevertheless arguing that sanctions are not warranted.

The Court next turns to Defendants' arguments against sanctions. First, defense counsel claims that "he believed that [the Court's discovery order] only applied to documents that were not deemed confidential." But the Court's order was not ambiguous on this point. Not only did the order not exclude confidential documents, it explicitly stated that such documents may be part of a "*Confidential* Appeal Inquiry or a Use of Force Critique." (ECF No. 43, at p. 2, n.4) (emphasis added). Moreover, as cited in the Court's order, the Supreme Court has stated that witness statements from internal investigations of grievances, such as these "often results in the creation of an administrative record that is helpful to the court. When a grievance is filed shortly after the event giving rise to the grievance, witnesses can be identified and questioned while memories are still fresh, and evidence can be gathered and preserved." *See Woodford v. Ngo*, 548 U.S. 81, 94-95 (2006). Given the Supreme Court's guidance, defense counsel's interpretation that

such witness statements would fall outside the discovery order was not reasonable.

Additionally, confidentiality is not a basis for withhold a document from discovery. As another court explained in requiring production of a similar document "generated by CDCR during investigation into an alleged use of force":

> [C]ompliance with confidentiality restrictions is not a basis for withholding discovery. Rule 26(b)(1) exempts from discovery privileged documents—not documents that are confidential. Fed. R. Civ. P. 26(b)(1) ("Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense …."). Thus, while a party seeking to withhold a document on the basis of privilege may do so by listing the document on a privilege log, a party seeking to withhold a document on the basis of confidentiality must seek a protective order. Fed. R. Civ. P. 26(c)(1) ("A party or person from whom discovery is sought may move for a protective order in the court where the action is pending .... The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense including ... forbidding the disclosure or discovery ... [and] limiting the scope of disclosure of discovery to certain matters."). Here, Defendants should have moved for a protective order in support of this objection at the time of their document production—they did not.
>
> Second, discovery in federal court is not governed by a state's regulatory scheme or state law related to confidentiality. Rather, the Ninth Circuit has made clear that, in civil rights actions brought pursuant to Section 1983, questions of privilege are resolved by federal law. *Kerr v. U.S. Dist. Ct. for N.D. Cal.*, 511 F.2d 192, 197–98 (9th Cir. 1975).

*Davis v. Schneider*, No. 2:18-CV-01910-VBF (MAA), 2020 WL 9074713, at *5-6 (C.D. Cal. Dec. 18, 2020) (internal footnotes omitted).

Defense counsel next contends he believed the Court's procedure for *in camera* review applied to documents requested during the written discovery process. But this interpretation is also not supported by the language in the Court's order. The order required production in 60 days from the date of the court order—not from the date of a discovery request. It also cited Advisory Committee Notes to 1993 Amendment to Federal Rules of Civil Procedure regarding Rule 26(a), which states that "The enumeration in Rule 26(a) of items to be disclosed does not prevent a court from requiring by order or local rule that the parties disclose additional information *without a discovery request*." (ECF No. 43, at p. 1, n. 2) (emphasis added). And it explained that, "If Defendant(s) object based on the official information privilege, Defendant(s) shall follow the procedures described in the Court's scheduling order." (ECF No. 43, at p. 3).

Next, defense counsel argues that counsel acted in good faith as shown by the fact that he lodged the confidential reports and statements upon a discovery request from Plaintiff, he produced documents that referred to information in the confidential investigation documents, and Plaintiff was aware of the confidential memorandum. He also argues that Plaintiff did not incur any expenses associated with delayed production.

The Court agrees that these circumstances mitigate the need for sanctions here. They indicate that Plaintiff had notice that the documents existed, and allowed Plaintiff to request them in discovery, which Plaintiff eventually did. They also minimize any prejudice to Plaintiff by Defendants' failure to disclose the documents earlier.

Upon review, the Court will discharge the order to show cause. The Court is certainly troubled by Defendants' failure to follow the Court's order and, as described above, believes that defense counsel's interpretation of the order was not reasonable. However, Defendants have now provided the documents for *in camera* review. Plaintiff does not appear prejudiced by the delay. Plaintiff has not incurred expenses or attorney fees related to Defendants' actions. Moreover, as described below, the Court finds that Defendants are entitled to withhold substantial portions of these documents based on the official information privilege.

## 2. Whether Documents Are Protected by Official Information Privilege

Having decided that it will not issue sanctions, the Court turns to whether Defendants must provide Plaintiff with the confidential documents at issue: (1) a confidential memorandum authored by Defendant Soto regarding the investigation into Plaintiff's alleged role in introducing cellphones into the prison; (2) a Prison Rape Elimination Act (PREA) memorandum authored by Lt. E. Guthery regarding Plaintiff's allegation that he was groped.

Under Rule 26 of the Federal Rules of Civil Procedure,

> [p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

The "common law governmental privilege (encompassing and referred to sometimes as

the official or state secret privilege) . . . is only a qualified privilege, contingent upon the competing interests of the requesting litigant and subject to disclosure. . . ." *Kerr v. U.S. Dist. Ct. for N. Dist. of Cal.*, 511 F.2d 192, 198 (9th Cir. 1975) (citations omitted). The Ninth Circuit has since followed *Kerr* in requiring in camera review and a balancing of interests in ruling on the government's claim of the official information privilege. *See, e.g., Breed v. U.S. Dist. Ct. for N. Dist. of Cal.*, 542 F.2d 1114, 1116 (9th Cir. 1976) ("[A]s required by Kerr, we recognize 'that in camera review is a highly appropriate and useful means of dealing with claims of governmental privilege.' ") (quoting *Kerr*, 426 U.S. at 406).

### a. Soto memorandum

The Soto memorandum (dated August 12, 2024) addresses the underlying events of this case, *i.e.*, Plaintiff's purported role in introducing cellphones into the prison, and includes statements from inmate witnesses. In their supplemental brief, Defendants contend that it should be withheld from discovery because "[t]he memorandum contains statements from confidential informants, and their personal information" which would jeopardize their safety and the ability of prison officials to investigate criminal activity. (ECF No. 111, p. 3) (citing Cal. Code Regs. Tit. 15, § 3321, which defines confidential information to include information that would endanger another's safety or jeopardize the security of an institution). Defendants provide the declaration of H. Castro, the litigation coordinator at VSP, who states as follows:

> The confidential source identified specific inmates and their statements to the Investigative Services Unit ("ISU".) If this information is released, it would make their identities known to the Plaintiff and subject them to retaliation and endanger their safety. The release of this information will also allow the Plaintiff to learn about ISU investigative techniques, and possibly disseminate that information among the populace, jeopardizing the facilities ability to investigate future violations.
>
> Furthermore, the release of this information may deter other inmates from participating in investigations. Inmates disclose information under the belief that their identity would remain confidential and not disclosed. If inmates learn their identity would be disclosed, they may not be willing to cooperate with ISU. If this information were disclosed, even redacted and pursuant to the protective order, it would endanger the confidential informants' life, as well as his family's safety, because the information is specific.

(ECF No. 111-1, p. 2). Defendants argue that the document should not be disclosed, but if the Court disagrees, request that they be permitted to redact it to protect the confidentiality of

witnesses. (ECF No. 111, pp. 3-4).

Based on its *in camera* review of the documents, the Court will order a redacted version of the document to be produced. Specifically, the Court will direct Defendants to redact the names and identifying information of inmate witnesses, the statements of inmate witnesses, and any other portions that reference or repeat the identifying information of inmate witnesses or the statements of inmate witnesses. Notably, while this information is relevant to the case, the Court agrees that the safety concerns associated with disclosure of such information outweigh its relevance. *See Stone v. Pfeiffer*, No. 1:21-CV-01461-NOD-JSAB (PC), 2024 WL 325370, at *1 (E.D. Cal. Jan. 29, 2024) ("[W]here otherwise discoverable information would pose a threat to the safety and security of the prison or infringe upon a protected privacy interest, a need may arise for the Court to balance interests in determining whether disclosure should occur.").

However, the memorandum also contains Defendant Soto's narrative of the investigation (including a recommendation), an interview with non-inmate Supervisor Martin Herroz, and the synopsis of an interview with Plaintiff. Defendants have failed to demonstrate that disclosure of that information poses safety concerns. As to these portions of the document, the relevance of the information outweighs any concerns about safety and security.

### b. PREA memorandum

The PREA memorandum (dated July 30, 2021) authored by Lt. Guthery contains a synopsis of the investigation into Plaintiff's claim that he was groped during a clothed body search. Among other things, the memorandum provides an overview of statements from inmate witnesses. As with the Soto memorandum, Defendants rely on the Castro declaration and contend that, "[i]f inmates learn their information would be released, then victims may be reluctant to cooperate and report any acts of sexual violence. Furthermore, the disclosing of the identity of witnesses, may also jeopardize their safety and subject them to retaliation." (ECF No. 111, p. 3) (internal citations omitted).

Consistent with the Soto memorandum, the Court will order a redacted version of the PREA memorandum be produced. Specifically, the Court will direct Defendants to redact the names and identifying information of inmate witnesses, the statements of inmate witnesses, and any other portions that reference or repeat the identifying information of inmate witnesses or the

9

statements of inmate witnesses.

However, Defendants should not otherwise redact Lt. Guthery's narrative overview of the investigation (including the conclusion), the statements of non-inmates, and the synopsis of an interview with Plaintiff. Once again, Defendants have failed to demonstrate that disclosure of this information poses safety concerns. The Court finds that the relevance of these portions of the document outweighs any safety and security concerns with disclosure.

### c. Additional Soto memorandum

In Defendants' response to the order to show cause, defense counsel provided a declaration stating as follows:

> Upon further review, I have identified an additional confidential record that may be responsive to the Court's June 23, 2023 order. I identified a confidential memorandum on August 3, 2021, authored by ISU Sergeant M. Soto. The document was not responsive to the Plaintiff's request for production of documents, and that is why it was not produced earlier. I will have the document sent to the Court for in camera review.

(ECF No. 110, pp. 5-6).

Defendants later provided the August 3, 2021 Soto memorandum to the Court for *in camera* review, which memorandum provides a brief synopsis regarding a contraband investigation at VSP, but is almost entirely composed of inmate witness statements relevant to the investigation. Defendants provided another declaration from H. Castro that asserts that production of this memorandum would endanger inmate safety and make future confidential witnesses less likely to participate in future investigations.

Although the August 3, 2021 Soto memorandum contains some relevant information, it is almost entirely composed of inmate witness statements that could jeopardize inmate safety and security. Accordingly, Court will not require Defendants to produce any portion of this document.

### C. MOTION FOR SANCTIONS REGARDING DEFENDANTS' INTERROGATORY RESPONSES

#### 1. Overview

Plaintiff moves for sanctions because he contends that, despite conferring with defense counsel about responses to certain interrogatories, Defendants failed to file supplemental responses with truthful information.

Specifically, he states that he provided these interrogatories to Defendants:

10

> Identify any and all complaints or grievances filed by any inmate against you pertaining to a Retaliation claim.
>
> Identify all complaints, prisoner appeals, and disciplinary actions that have been submitted against you while in your role as a correctional [official], which pertain to retaliation allegations. The retaliation at issue in this case was part of a pattern or custom by Defendant.
>
> Have you ever been accused of falsifying documents?[1]

(ECF No. 108, pp. 2-5).

With limited exception not pertinent here, Defendants denied in their interrogatory responses that they had prior grievances or complaints filed against them pertaining to retaliation and stated that they had not been accused of falsifying documents.

Plaintiff asserts that these responses were lies. As to Defendant Soto, Plaintiff discovered through a Google search that Plaintiff had retaliation claims filed against him in two cases in this District: (1) *Miller v. Soto*, 1:20-cv-01117-AWI-SAB; and (2) *Jawad v. Soto*, et al., 1:22-cv-238-JLT-EPG. (*Id.* at 3). Plaintiff also appears to accuse Soto of lying for failing to disclose a grievance filed by the *Miller* plaintiff. (*Id.*). As to Defendants Borba and Noujaime, Plaintiff discovered a grievance filed against them by an inmate named James Prado that accused them of retaliation and falsifying reports. (*Id.* at 7).

Defendants respond that "sanctions are not warranted because any omission made by Defendants was inadvertent, and not willful or in bad faith. Vega also has not established any prejudice, and to the extent appropriate, Defendants have served amended responses." (ECF No. 120, pp. 1-2). More specifically, Soto filed a declaration stating that he was represented by counsel in the *Miller* lawsuit, that as a lay person he is not familiar with the legal causes of action in it, and that until his counsel told him about it, he did not recall this case. (ECF No. 120-2, p. 2). Further, Soto states, "I do recall that Inmate Miller filed a grievance, but to the best of my recollection, I believed the grievance only concerned overturning a Rules Violation Report I issued against him. I was not aware that Inmate Miller also accused me of retaliation." (*Id.*).

As for the *Jawad* case, Defendants state that the retaliation claim was dismissed at screening, indicating that Soto was unaware of it. (ECF No. 120, p. 5). Defendant asks the Court

---

[1] It appears that this interrogatory was provided to only Defendants Borba and Noujaime. (ECF No. 108, pp. 2-5; ECF No. 127, p. 4).

to take judicial notice of the *Jawad* case. (ECF No. 120-3, p. 2). The Court will grant this request and will also take judicial notice of the *Miller* case. *See United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980) (citing Federal Rule of Evid. 201(b)(2) and noting that "a court may take judicial notice of its own records in other cases").

Defendants also argue that they were diligent in searching for grievances. Aside from relying on their own personal knowledge of past grievances, they requested that the CDCR conduct a search for grievances against them using the Offender Grievance Tracking (OGT) system. (ECF No. 120, p. 2). In support, they provide the declaration of VSP Litigation Coordinator H. Castro, who provides an overview of the OGT system. (ECF No. 120-1, pp. 1-3). Most pertinent here, Castro describes the system as being subject to human error and resource limitations. While a grievance alleging staff misconduct is attached to a staff member's name, "when multiple staff members are accused of wrongdoing in a single grievance, it may not be attached to every staff member listed." (*Id.* at 2). Grievances are also assigned a category, but this "is dependent on how the inmate describes his or her issues in a single grievance, and subject to staff discretion." (*Id.*). Grievances "need to be reviewed by hand for responsiveness because optical character resolution is not available on the OGT." (*Id.*). Castro conducted a search for grievances using Defendants names, but this "search did not return grievances filed by James Prado, Christopher Miller, or Ryan Jawad naming those staff members . . . because reviewing staff did not attach the grievances to the Defendants name." (*Id.* at 2-3).

Further, as to the Prado grievance that concerns Borba and Noujaime, Defendants contend that the substance of it related to a due process violation during a Rule Violation Report hearing and the vague allegations were not responsive to Plaintiff's interrogatories. (ECF No. 120, pp. 4-5). Lastly, Defendants generally argue that any error was harmless because Plaintiff had independent knowledge of the discovery he complains was not produced, and they appropriately supplemented their responses when the information was brought to their attention.

Plaintiff's reply asserts that Defendants' discovery responses should be viewed in light of his allegations in this case that Defendants orchestrated a false RVR relating to him smuggling cellphones into prison. (ECF No. 127, pp. 1-3). Moreover, Plaintiff generally accuses Defendants of lying and states that they should have had personal knowledge regarding the discovery at issue.

He urges the Court to consider monetary sanctions.

### 2. Legal Standards

Federal Rule of Civil Procedure Rule 37(c) provides:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> > (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
> >
> > (B) may inform the jury of the party's failure; and
> >
> > (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).[2]

Fed. R. Civ. P. 37(c)(1)(A)-(C).

In turn, Rule 26(e) requires a party "who has responded to an interrogatory" to "supplement or correct its disclosure or response: in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A).

A decision to impose discovery sanctions is reviewed for abuse of discretion. *Liberty Ins. Corp. v. Brodeur*, 41 F.4th 1185, 1189 (9th Cir. 2022). And a court "abuses its discretion when its decision is based on an inaccurate view of the law or a clearly erroneous finding of fact." *The Traditional Cat Ass'n, Inc. v. Gilbreath*, 340 F.3d 829, 833 (9th Cir. 2003).

### 3. Analysis

As an initial matter, Plaintiff is correct that Defendants' discovery responses were incorrect, and did not include all responsive information. However, Defendants have now provided corrected supplemental responses, and there is no indication that the supplemental responses are incorrect or incomplete.

---

[2] Under Rule 37(b)(2)(A)(i)-(vi), the sanctions permitted are: "(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; (vi) rendering a default judgment against the disobedient party."

The Court next considers whether the omission was intentional. Starting with Soto, Defendants contend that Soto, being a layman, was not aware that *Miller* concerned a retaliation claim, and he only recalled the lawsuit after he spoke to defense counsel. (ECF No. 120-2, p. 2). As to *Jawad*, Defendants contend that Soto was unaware of the retaliation claim because it was dismissed as screening. (ECF No. 120, p. 5). Plaintiff asserts that Soto was an "active Defendant" in these cases so he must have remembered them. (ECF No. 127, p. 5).

The Court finds it credible that Soto did not understand that the *Miller* case included a retaliation allegation because Soto's attorney handled the day-to-day litigation. The Court also finds it credible that Soto was not aware of the allegations in *Jawad* because the retaliation claim was dismissed at screening before Soto was even served. (*See* ECF No. 17 of *Jawad* case, order allowing case to proceed on only an excessive-force claim against Defendant Soto). The same likewise holds true for the grievance at issue. Soto's declaration states that he would not be made aware of a grievance unless there was an inquiry against him, and while he recalls the Miller grievance, he believed that it concerned overturning a Rules Violation Report, and was not aware that he was accused of retaliation. (ECF No. 120-2, p. 2). In short, there is not sufficient evidence to show that Soto's failure to supplement his discovery responses was more than inadvertent.

As for the Prado grievance documents regarding Defendants Borba and Noujaimie, the Court has reviewed them, and for the most part, they complain about Prado's being charged with an allegedly false RVR rather than being personally directed towards Borba and Noujaime. (ECF No. 108, pp. 90-93). Further, as demonstrated by Castro's declaration, despite a search of OGT system, this grievance was not found because staff failed to attach the grievance to Defendants' names. (ECF No. 120-1, pp. 2-3). Once again, there is not sufficient evidence to show that the failure of Borba and Noujaime to supplement their responses was intentional.

The Court acknowledges that Plaintiff states that he informed defense counsel on numerous occasions that Defendants lied in their interrogatories and indicates that he also provided some of the information at issue, including Prado's pertinent documents. (ECF No. 108, pp. 3-4). Given that the parties' meet and confer efforts are not of record, nor clearly set out in the briefing, it is difficult to tell whether Defendants failed to timely supplement their interrogatory responses after being provided such relevant information.

With this in mind, the Court considers whether sanctions should issue. Here, Plaintiff does not allege any harm that he suffered. For example, to the extent that Plaintiff seeks monetary sanctions, he has no attorney and thus can collect no attorney fees; moreover, he has not claimed that he has suffered any expenses. Lastly, Defendants represent that they have since served amended responses.

In short, the record does not indicate that Defendants' failure to earlier supplement their interrogatory responses was intentional, and even assuming that Defendants failed to timely supplement their interrogatory responses, Plaintiff has not been harmed.

Thus, although the Court is again troubled by Defendant's failure to initially provide correct information, the Court will decline to issue sanctions against Defendants because it does not find bad faith or prejudice to Plaintiff.

### D.   MOTION FOR SANCTIONS REGARDING ALLEGED SECRET DEPOSITIONS

Plaintiff's second motion for sanctions accuses Defendants of conducting "secret" depositions. (ECF No. 112). He states that in early March 2023 he learned that defense counsel had conducted "interviews" of witnesses including his former job supervisor, Martin Herroz, and a former-inmate named Jonathan Miller. (*Id.* at 2). When Plaintiff later deposed these persons, he learned that the "interviews" may "actually be 'depositions.'" (*Id.*). Generally, Plaintiff asserts that, at the depositions, he told each witness that they gave "testimony" in March 2023 to defense counsel and asked each witness whether their deposition testimony was the same as their March 2023 testimony. Defense counsel lodged objections at the depositions, but Herroz and Miller each affirmed that their deposition testimony was the same as their prior testimony. Further, Plaintiff states that Miller, in a declaration, recalls another inmate, Walter Rodriguez, being deposed.[3] Plaintiff requests a court order requiring defense counsel to turn over copies "of those transcripts that have been kept from him and produced in secret by defense counsel." (*Id.* at 4-5). He also

---

[3] The attached Miller declaration states: "On or about March 3, 2023, I, along with I/M Walter, Rodriguez and Supervisor Martin Herroz were interviewed by, (who I recognize today) Deputy Attorney General Iranmanesh where before, I was mistaken as I was led to believe that Mr. Iranmanesh came on behalf of Mr. Vega and during the interview, the Deputy Attorney General made me believe the interview was procedural or normal to the process yet today I understand otherwise that the March 2023 interview was in fact a deposition which I did not know until April 15, 2024 that it was a deposition when being deposed by Mr. Vega with the deputy attorney general being present who objected to majority of Mr. Vegas questions." (ECF No. 112, p. 8).

wants defense counsel to be ordered to turn over contact information for each person deposed and requests sanctions, including contempt of court and monetary fines.

Defendants have filed an opposition, supported by the declaration of defense counsel, Attorney Mohammad Iranmanesh. (ECF No. 124). Counsel states that he interviewed Supervisor Herroz and Inmates Miller, Rodriguez, and Gilley; each call lasted less than thirty minutes; and all the conversations were informal, with no court reporter or testimony recorded. (ECF No. 124-1, pp. 1-2). Defendants argue that, because defense counsel never in fact deposed witnesses in secret, Plaintiff's motion must be denied.

Plaintiff has filed no reply brief, and the time to do so has expired. *See* Local Rule 230(l).

Upon review, the Court will deny Plaintiff's motion. Rule 30(b)(1) requires a person who wants to conduct an oral deposition to "give reasonable written notice to every other party." While Plaintiff claims that he was never notified of these depositions, it does not appear that these interviews were in fact depositions. While Miller has provided a declaration stating that he later realized he was deposed by defense counsel, he provides no factual support to show that this is true, such as stating that he gave sworn testimony that was recorded before a court reporter. In contrast, defense counsel has provided a declaration stating that he informally interviewed each witness, that no testimony was recorded nor any oath administered, and that counsel did not depose any of these persons. (ECF No. 124-1, pp. 1-2).

Because it appears that the interviews were not in fact depositions, sanctions are unwarranted.

### E.    ORDER

For the reasons given above, IT IS ORDERED that:

1. The Court's April 18, 2024, order to show cause is discharged. (ECF No. 106).
2. The Court overrules Defendants' assertion of official information privilege in part. By no later than August 6, 2024, Defendants shall produce redacted copies of the documents described above in this order:
   a. Specifically, regarding the August 12, 2021 Soto memorandum, Defendants shall redact the names and identifying information of inmate witnesses, the statements of inmate witnesses, and any other portions that reference or repeat

the identifying information of inmate witnesses or the statements of inmate witnesses. However, Defendants shall otherwise provide Soto's narrative of the investigation (including a recommendation), interview with non-inmate Supervisor Martin Herroz, and the synopsis of the interview with Plaintiff.

    b. Regarding the July 30, 2021 PREA memorandum authored by Lt. Guthery, Defendants shall redact the names and identifying information of inmate witnesses, the statements of inmate witnesses, and any other portions that reference or repeat the identifying information of inmate witnesses or the statements of inmate witnesses. However, Defendants shall otherwise provide Lt. Guthery's narrative overview of the investigation (including the conclusion), the statements of non-inmates, and the synopsis of an interview with Plaintiff.

3. Defendants shall also file a notice with the Court by August 6, 2024, confirming that they have provided the above documents to Plaintiff.

4. Plaintiff's motion for sanctions regarding Defendants' interrogatory responses is denied. (ECF No. 108).

5. Defendants' request for judicial notice is granted. (ECF No. 120-3).

6. Plaintiff's motion for sanctions regarding alleged secret depositions is denied. (ECF No. 112).

IT IS SO ORDERED.

Dated: **July 19, 2024**  /s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE